IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| ELIZABETH BAILEY,<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY,<br>　　　　　　　Defendant. | :<br>:<br>:<br>: CIVIL ACTION<br>:<br>: NO.: 3:24-cv-00209-HES-MCR<br>:<br>:<br>:<br>: |

**MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED
STATEMENT OF FACTS AND MEMORANDUM OF LAW**

Reliance Standard Life Insurance Company moves for summary judgment in its favor and against Plaintiff. In support of this motion, Reliance Standard relies on the following Statement of Facts and Memorandum of Law.

**I.　　STATEMENT OF FACTS**

1.　　Reliance Standard delivered group long term disability insurance policy number LTD108240 to Seminole Electric Cooperative, Inc to insure benefits under its welfare benefit plan. AR1-34.

2.　　The Policy insures eligible employees of Seminole and provides "income replacement benefits for Total Disability from Sickness or Injury." AR1.

3.　　Seminole employed Plaintiff as a Plant Invoice Specialist. AR227.

4.　　Plaintiff stopped working for Seminole Electric on March 31, 2021 and later applied to Reliance Standard for long term disability benefits. AR227.

5.　　When asked "why are you unable to work", Plaintiff responded that she "was removed from work by [her] neurologist. AR227.

307518517v.1

2316a776490a071e

6.      On October 27, 2022, Fawzi Elsagga, M.D., Plaintiff's neurologist completed the Attending Physician section of the disability claim application and identified "chronic migraine" as Plaintiff's "primary diagnosis" and "cervical radiculopathy" as a "secondary condition[] contributing to disability". AR233.

7.       Dr. Elsagga also reported that Plaintiff was physically capable of working at a light exertion level during an eight-hour work day, including sitting, standing, walking and driving 3-5 hours per day. AR234.

8.      Neither Plaintiff nor Dr. Elsagga reported any mental or nervous diagnoses, but Dr. Elsagga nonetheless reported that Plaintiff is moderately and extremely limited from performing certain activities from a mental or nervous perspective. AR234.

9.      Plaintiff submitted medical records that document treatment between October 2020 and July 2023. AR235, 242, 244, 246, 248, 250, 263, 264, 266, 275, 278, 281, 284, 287, 289, 294, 296, 298, 300, 302, 303, 304, 306, 330, 441, 444, 481, 483, 546, 638, 639.

10.      Despite complaints of headaches (and the use of mediation for it), Plaintiff continued to work through March 2021. AR227.

11.      According to Dr. Dejuk's October 5, 2020 progress note, Plaintiff had no anxiety or depression. AR248.

12.      Notes from Dr. Dejuk's objective examinations, including his neurologic examination, were normal. AR248.

13.      The same objective findings were reported when Plaintiff returned to Dr. Dejuk on October 15, 2020, still complaining of migraine headaches, including one that she claimed began on Sunday morning and continued all the way through Tuesday. AR246.

14.    Dr. Dejuk referred Plaintiff to Dr. Elsagga, who evaluated Plaintiff *via* telemedicine on November 3, 2020. AR306.

15.    Plaintiff told Dr. Elsagga that she has worked as an invoice specialist for Seminole for 14 years and that she has a ten-year history of migraine headaches. AR481.

16.    On December 3, 2020, Plaintiff was seen by Dr. Elsagga for an occipital block. AR481.

17.    Two weeks later, on December 15, 2020, Dr. Elsagga again evaluated Plaintiff *via* telemedicine, and Plaintiff stated "that after the occipital block headache resolved for about 3 days. She wakes up with headaches." AR481.

18.    There is no further record of treatment until March 16, 2021, when Plaintiff was evaluated by Dr. Elsagga via telemedicine and she reported that "she tried the Topamax but made her disoriented. She states she missed 3 days of work last week because of severe headaches and had one last all weekend." AR306.

19.    Based on the remote evaluation, Dr. Elsagga wrote:

Objective
Gen Appearance: well developed, sitting upright in chair, comfortable
HEENT: atraumatic, palpation along occipital right reproduces characteristic pain in the occiput that radiates superiorly
Pulm: SORA
Ext: no clubbing, no edema
Cognition: Awake, alert, oriented to self, place and time. Speech fluent
Cranial Nerves: symmetric smile
Motor: moving all 4 extremities symmetrically against gravity
Gait: normal

AR306.

20.    Dr. Elsagga wrote that she initially "suspected Migraines vs chronic tension headaches, however, she is not responding to treatment" and that "occipital neuralgia, suspected. However, she did not respond to treatment as expected". AR307.

21.     Dr. Elsagga adjusted Plaintiff's medication, ordered a cervical spine MRI and noted that Plaintiff's "MRI brain okay". AR307.

22.     On March 30, 2021, the last day on which Plaintiff worked, Plaintiff was evaluated in-person by Dr. Elsagga; however, Dr. Elsagga's "objective" findings remained unchanged. AR304.

23.     Dr. Elsagga wrote: "Suspect right sided C3 radiculopathy; Initially suspected Migraines vs chronic tension headaches however, she is not responding to treatment. MRI c spine doe[s] not show supporting findings". AR305.

24.     Dr. Elsagga also again wrote that Plaintiff did not respond to treatment for suspected occipital neuralgia as expected. AR305.

25.     Plaintiff stopped working on March 31, 2021. AR227.

26.     Plaintiff was next evaluated until April 5, 2021, when she returned to Dr. Elsagga. AR303.

27.     Plaintiff told Dr. Elsagga that "she passed out again. She also states that she has continued to have bad headaches/migraines. She took Maxalt and it helped slightly. She states that she only recalled before the event she was dizzy". AR303.

28.     There is no record of any hospitalization, emergency department or urgent care treatment after she allegedly passed out. AR1-835.

29.     Plaintiff was evaluated *via* telemedicine on April 12, 2021, and Dr. Elsagga reported that Plaintiff's recent "EEG is normal". AR302.

30.     During the April 12, 2021 evaluation, Plaintiff told Dr. Elsagga that "she is having all of the migraine symptoms without the pain". AR302.

31.     On April 19, 2021, Plaintiff returned to Dr. Dejuk for a checkup. AR244.

32.     Dr. Dejuk wrote that she "was prescribed ubrevly and CVS wouldn't give it anymore (hasn't been here since October 2020)". AR244.

33.     Dr. Dejuk's objective findings showed no change in Plaintiff's condition at or about the reported date of loss, as his findings were identical to those reported in October 2020. Compare, AR244, 248.

34.     On May 4, 2021, Plaintiff was again evaluated remotely, and she told Dr. Elsagga that "since April she has had 3 migraines that last 4 days each. Pt. states she is having lots of neck pain and stiffness. She continues to have pain that radiates across the right scalp and behind right eye". AR300.

35.     Dr. Elsagga's objective findings remained unchanged. AR301.

36.     During the claim investigation, Reliance Standard considered additional records of treatment provided through July 3, 2023. AR235, 263, 264, 266, 275, 278, 281, 284, 287, 289, 294, 296, 298, 283, 441, 444, 546, 638, 639, AR53-55.

37.     Reliance Standard denied Plaintiff's claim on January 25, 2023, writing in part that "despite the self-reported symptoms, exams remained unremarkable. Referenced EEG was normal, cervical spine MRI did not show supportive findings, brain MRI and head CTA were normal". AR150.

38.     Plaintiff appealed from the claim denial on July 14, 2023. AR526-543.

39.     Plaintiff relied, in part, on her award of Social Security disability benefits effective March 30, 2021. AR530, 726-727.

40.     Plaintiff also relied on the report of a vocational evaluation performed by Gerri Pennachio. AR530, 269-273.

41.    Reliance Standard acknowledged receipt of the appeal and informed Plaintiff that her claim would be submitted for an "independent review" that will be "conducted separately from the individual(s) who made the original claim determination" AR152.

42.    Jon Glass, M.D. is a Board Certified Neurologist who was identified and engaged by a third party vendor to perform an independent medical peer review. AR788-796.

43.    Dr. Glass reviewed the medical records for the period October 5, 2020 through December 6, 2022. AR788-793.

44.    Dr. Glass also made three attempts to contact Dr. Elsagga to discuss Plaintiff's condition; however, Dr. Elsagga never responded to the voice messages. AR793.

45.    Based on his review of the records, Dr. Glass confirmed the existence of three neurological diagnoses, namely: (i) "a history of migraines associated with dizziness (vestibular migraine)…that in itself is neurologically impairing due to the presence of dizziness and imbalance"; (ii) "a history of syncopal and presyncopal episodes that are neurologically impairing" and (iii) obstructive sleep apnea that is not impairing". AR794.

46.    Dr. Glass recommended that Plaintiff never climb ladders, work at unprotected heights, operate heavy machinery or drive; however, Dr. Glass concluded that Plaintiff was capable of sitting throughout an eight-hour work day, standing and walking 2 hours each in an 8-hour work day (15 minutes at a time); occasional pushing, pulling, lifting and carrying up to ten pounds, crawling, kneeling and climbing stairs; and constant reaching, typing, grasping, fine manipulation and use of foot controls". AR795.

47.    On September 21, 2023 and again on September 27, 2023, members of Reliance Standard's vocational staff reviewed the occupational demands of Plaintiff's occupation. AR809-811, 812-814.

48.     Christina A. Buckley, M.Ed., CRC is a Vocational Rehabilitation Specialist who "reviewed and considered all of the relevant information available in the claim file including (but not limited to) the job description, Education and Employment Form and Occupational Analysis" and identified the "best available DOT based occupational designation" for Plaintiff's regular occupation, namely: "Accounting Clerk", a sedentary occupation. AR809-811.

49.     Mia Zafarino, MS, CRC is a Vocational Rehabilitation Specialist who reviewed Plaintiff's "occupation and current physical restrictions to determine if [she] is prohibited from performing her Regular Occupation". AR812.

50.     Ms. Zafarino considered the reports of Ms. Buckley and Ms. Pennachio, as well as the report of Dr. Glass and she concluded that the restrictions and limitations recommended by Dr. Glass "are consistent with the physical demands of an Accounting Clerk as it is typically performed in the national economy" and that Plaintiff is not precluded from performing the sedentary demands of her Regular Occupation. AR813.

51.     On October 11, 2023, Reliance Standard sent a copy of Dr. Glass' report, along with the own occupation reviews performed by Reliance Standard's vocational staff to Plaintiff's counsel for comment. AR155-156.

52.     Plaintiff did not submit a statement from any physician, contesting Dr. Glass' opinion. AR1-835.

53.     Rather, Plaintiff's counsel submitted an "Updated Vocational Assessment" from Ms. Pennachio. AR818-822.

54.     Ms. Pennachio abandoned her prior position regarding the classification of Plaintiff's regular occupation and instead accepted Reliance Standard's classification of Plaintiff's regular occupation as an "Accounting Clerk". AR818-822.

55.    Reliance Standard considered the updated report, and Ms. Buckley again

reviewed the claim from a vocational perspective. AR826-827.

56.    Ms. Buckley wrote:

In review of the Vocational Opinion by Consultant Pennachio, it is agreed that per the Department of Labor (DOL) the occupation of Account Clerk does require the "Work Situations (Temperaments)" of Attaining precise set limits, tolerances and standards. This is defined by the DOL as "Work situations that involve adhering to and achieving exact levels of performance, using precision measuring instruments, tools, and machines to attain precise dimensions. Preparing exact verbal and numerical records. Complying with precise instruments and specifications for materials, methods, procedures, and techniques to attain specified standards." While it is appreciated the Ms. Bailey does in fact have symptomology related to her migraines/vestibular migraines, as indicated in the Peer Review of 8/25/23, the restrictions and limitations provided by the Reviewer do not limit Ms. Bailey from performing tasks related to the "Work Situations" as outlined above. It is also noted that Ms. Bailey self-reports the duration/severity of her migraines and the Peer Reviewer does not indicate restrictions or limitations during these self-reported periods of symptomology. Additional medical opinions were not provided with Consultant Pennachio's opinion supporting the inability to perform such tasks as attaining precise set limits, tolerances and standards on a consistent basis. Therefore, the previous opinion in the Own Occupation Review of 9/27/23 would remain the same, that Ms. Bailey would not be precluded from performing her Regular Occupation of Accounting Clerk.

AR826.

57.    Dr. Glass was also asked to reconsider the claim based on the newly submitted

documentation, and he prepared an addendum report on November 20, 2023. AR828-829.

58.    When asked whether the additional information altered his opinion, Dr. Glass

wrote:

No. The provided information does not alter my previous opinion. No medical opinions were provided. The only information provided was from the claimant's lawyer, providing a legal opinion and not providing any new medical facts. The information provided summarized was previously reviewed, and represents a non-medical opinion regarding the claimant's neurological status. Given the lack of any new neurological or other medical facts medically supporting a neurological impairment, my prior determination has not changed.

AR828.

59.     On December 4, 2023, Reliance Standard notified Plaintiff of its "determine[ation] that our original decision to deny this claim was appropriate." AR157-164.

60.     Reliance Standard cited to the pertinent policy provisions, pertinent medical records, vocational reports, and the independent peer review report of Dr. Glass. AR157-164.

61.     Reliance Standard wrote, in part:

> In conclusion, although Ms. Bailey was diagnosed with migraines and cervicalgia, the totality of the information concluded that she was not considered Totally Disabled. In addition, there was no change in her examination, and she was only being seen every three week for follow ups of ongoing conservative treatments, including medication management. In addition, her MRI scans and CT scan results were all normal with no abnormal findings. As, such although we sympathize with Ms. Bailey's reported symptoms, the medical records did not support a level of impairment to preclude Ms. Bailey from performing the material duties of her Regular Occupation as of March 31, 2021.

AR163.

62.     Reliance Standard also considered Plaintiff's Social Security Disability award and explained that the Social Security Administration did not have the same information that was available to Reliance Standard, including the reports of Dr. Glass. AR163.

63.     Reliance Standard's December 4, 2023 claim decision was "final" and "exhausted any administrative remedies available to [Plaintiff] under the terms of the Policy". AR163.

64.     Plaintiff responded by filing this lawsuit under authority of ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), seeking to clarify her alleged right to receive plan benefits and to recover plan benefits allegedly owed. ECF1.

65.     Based on the points and authorities set for the below, Plaintiff is not entitled to the relief claimed.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment must be issued when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, when, as is the case here, there exists no genuine issue of material fact, summary judgment is appropriate after there has been "adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

Unlike typical summary judgment proceedings, courts reviewing dispositive motions in ERISA cases have recognized that "summary judgment is simply a vehicle for deciding the [benefits] issue and the non-moving party is not entitled to the usual inferences in its favor." *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 82-83 (1st Cir. 2010); *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010); *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009) (explaining "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply"). Regardless, in this case, the facts of this case do not lend themselves to any reasonable inference that would justify the relief that Plaintiff seeks.

## III.   ERISA STANDARD OF REVIEW

The Plan expressly states that Reliance Standard, as the claims review fiduciary, has "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." AR15.  Review of Reliance Standard's decision must therefore be conducted under

the arbitrary and capricious standard of review. *See Charlebois-Deubler v. Prudential Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 34751, *9-10 (M.D. Fla. Mar. 13, 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). Courts within the Eleventh Circuit conduct a multi-step analysis when reviewing ERISA benefit determinations under this standard of review. *See Id.* See also Jean Baptiste v. Securian Fin. Grp., Inc., 557 F. Supp. 3d 1271, 1281 (S.D. Fla. 2021).

First, courts conduct a *de novo* review to determine whether the decision was wrong. *Id.* at *10. If the decision is not *de novo* wrong, the inquiry ends and the court will affirm the decision. *Id.* at *10 (citing *Ruple v. Hartford Life & Accident Ins. Co.*, 340 F. App'x. 604, 610-11 (11th Cir. 2009)). If, however, an insurer acting under a grant of discretion makes a "wrong" decision, then the Court will consider whether the decision is supported by reasonable grounds. *Id.* at *10. A "wrong but reasonable determination may not be overturned." *See Phillips v. Metro. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 31167, 4 (M.D. Fla. Mar. 31, 2008). As long as the benefit determination is reasonable, "[i]t is irrelevant that the court or anyone else might reach a different conclusion." *Charlebois-Deubler*, 2013 U.S. Dist. LEXIS 34751, at *5 (citing *Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002).

When a reasonable basis for the decision exists, the court will next consider whether the insurer operates under a conflict of interest and may consider the conflict as but one of many factors when conducting its review. *See Ponce v. Life Ins. Co. of N. Am.,* 2012 U.S. Dist. LEXIS 139967, *14-15 (S.D. Fla. Sept. 28, 2012). However, the conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. 105 at 117-18.

307518517v.1

"Under this framework, if the administrator has discretionary authority, the court can skip to step three, where it must determine, *not* whether the decision was right or wrong, but only whether it was arbitrary and capricious." Jean Baptiste, 557 F. Supp. 3d 1271, 1281 (S.D. Fla. 2021) (citing *Mickell v. Bell / Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 591 (11th Cir. 2020); *Doyle v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1352, 1357 (11th Cir. 2008); *Whiteside v. Securian Life Ins. Co.*, 2017 WL 8897132, at *4 (M.D. Fla. Dec. 7, 2017); *Prelutsky v. Greater Ga. Life Ins. Co.*, 692 Fed. Appx. 969, 972 (11th Cir. 2017)).

Reliance Standard is both insurer and decision maker and therefore operates under a structural conflict of interest. However, the conflict is not an important factor here, at least not one that should be given any considerable weight. This is because the benefit determination is correct and supported by substantial evidence in the administrative record to which this Court's review is limited. *See Phillips v. Metro. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 31167, 3-5 (M.D. Fla. Mar. 31, 2008) (discussing the ERISA standards of review and stating that the initial *de novo* review and any necessary subsequent arbitrary and capricious review is conducted on the administrative record).

## IV.    ARGUMENT

### A.    Plaintiff Failed to Submit Adequate Proof of Total Disability

The Monthly Benefit that Plaintiff seeks is only available if she, among other policy requirements, "submits satisfactory proof of Total Disability to [Reliance Standard]". AR20. Plaintiff must first prove that she is Totally Disabled for the duration of the policy-mandated Elimination Period, which is "90 consecutive days of Total Disability" that "begins on the first day of Total Disability" and "for which no benefit is payable". AR20, 11, 7, 10. According to her application for benefits, Plaintiff last worked on March 30, 2021 and was "first unable to work"

effective March 31, 2021. AR27. Based on her reported date of loss, Plaintiff's Elimination

Period ended on June 29, 2021. However, Plaintiff did not satisfy a single day of the Elimination

Period because there is no proof that she was Totally Disabled when she stopped working, let

alone for the 90 days that followed.

Relative to Plaintiff's claim, "Total Disability" means "that as a result of an Injury or

Sickness…during the Elimination Period and for the first 24 months for which a Monthly benefit

is payable, an Insured cannot perform the substantial and material duties of his/her regular

occupation". AR11. It will not suffice for Plaintiff to merely provide a statement of her self-

reported symptoms – as she has done. Rather, to satisfy her burden, Plaintiff must present

objective evidence of Total Disability.

In *Watts v. BellSouth Telecomms., Inc.*, 218 F. App'x 854, 856-57 (11th Cir. 2007), the

Eleventh Circuit wrote that "where the plan puts the burden on the claimant to prove that she is

disabled, it is implicit in the requirement of proof that the evidence be objective". The objective

proof requirement is "logical and necessary" because it "promotes integrity in the application of

the law" and "assures claimants are treated fairly and with parity by providing that coverage

decisions are not based on varying subjective expressions by claimants of a disease, illness or

condition with which they have been diagnosed". *Id*. at 857 (citing *Brucks v. Coca-Cola Co.*, 391

F. Supp. 2d 1193, 1205 (N.D. Ga. 2005). The objective proof requirement means that claimants

must "establish that the diagnosed disease, illness or condition results in an actual disability, not

just a perceived one" and it "promotes integrity by assuring there is corroboration for a

claimant's subjective complaints, thus deterring embellished allegations of the effect of the

diagnosed malady as well as deterring fraud in the claims process". *Id*. at 857 (citing *Brucks*, 391

F. Supp. 1193, 1205.

"Case law supports the conclusion that it is reasonable for a plan administrator to require objective medical evidence even where the plan does not specifically contain such a requirement". *Fick v. Metro. Life Ins. Co.*, 347 F. Supp. 2d 1271, 1286 (S.D. Fla. 2004). "Where a plan requires proof of continued disability, 'the very concept of proof connotes objectivity'". *Id*. at 1286 (citing *Maniatty v. UNUM Provident Corp.*, 218 F. Supp.2d 500, 504 (S.D.N.Y.2002), aff'd, 62 Fed. Appx. 413, 2003 WL 21105390 (2d Cir.), cert. denied, 540 U.S. 966, 157 L. Ed. 2d 310, 124 S. Ct. 431 (2003)).

As noted in *Fick*, "'Were an opposite rule to apply, LTD benefits would be payable to any participant with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional.'" *Id*. at 1286 (citing *Coffman v. Metro., Life Ins*. Co., 217 F. Supp. 2d 715, 732 (S.D. W.Va.2002), *aff'd*, 77 Fed. Appx. 174, 2003 WL 22293610 (4th Cir.2003)). Further, "[i]n the absence of a requirement of objective evidence, the review of claims for long-term disability benefits would be 'meaningless because a plan administrator would have to accept all subjective claims of the participant without question.'" *Id*. at 1286-1287 (citing *Williams v. UNUM Life Ins. Co. of Am.*, 250 F. Supp. 2d 641, 648 (E.D. Va.2003)). "Furthermore, the fiduciary role of the plan administrator of scrutinizing claims, protecting the assets of a plan, and paying legitimate claims would be seriously compromised". *Id*. at 1287. *See also Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1356 (M.D. Fla. 2004).

Contrary to the authority identified above, Plaintiff's "proof" is limited self-reported symptoms and alleged limitations (as conveyed by Plaintiff to her treating physicians), a vocational assessment that relies on limitations recommended by Plaintiff's doctor five months after Plaintiff stopped working and arguments from Plaintiff's counsel. Even to the extent that

Plaintiff's treating doctors endorse her alleged disability, their opinions are not binding on Reliance Standard. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965 (2003) ("we hold, courts have no warrant to require administrators to automatically accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"). Significantly, missing from Plaintiff's purported "proof" is any objective evidence of Total Disability.

In *Cottingim v. ReliaStar Life Ins. Co.*, 723 F. Supp. 3d 1174, 1193 (M.D. Fla. 2024), the burden also belonged to the insured to prove disability. However, like here, the "medical evidence show[ed] that his condition stayed the same in the time period from August 2019 to his disability onset date in August 2020 and failed to reflect disabling restrictions or limitations". *Id.* at 1994. For this reason, the court granted judgment in favor of the plan following *de novo* review. As noted above, Reliance Standard has discretionary authority. Therefore, Reliance Standard's defense is even stronger. Under the deferential standard, "[a]s long as a reasonable basis appears for the plan administrator's decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision". *See Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006) (citing *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1140 (11th Cir. 1989)).

**B.     Plaintiff has not Provided Objective Proof of Total Disability**

**1.     The Initial Vocational Assessment on which Plaintiff Relies is Flawed**

Prior to claiming Total Disability, Plaintiff was employed as a Plant Budget & Invoice Specialist. AR804. According to a Dictionary of Occupational Titles extract that Plaintiff submitted, her occupation was classified as a "Billing Typist", a sedentary occupation. AR630.

Gerri Pennachio, a Vocational Rehabilitation Consultant who was engaged by Plaintiff,

performed a vocational assessment, and concluded that Plaintiff's regular occupation is a

sedentary occupation but classified her occupation as an "Invoice Specialist".[1] AR271. However,

Ms. Pennachio concluded that Plaintiff would not be able to meet the demands of her sedentary

occupation.

Again, Plaintiff stopped working on March 31, 2021; however, Ms. Pennachio wrote:

> ***As of 08/18/21*** Dr. Elsagga noted that she should refrain from work. Although the
> neurology reviewer Dr. Pearce has noted that there is no restrictions, when
> reviewing areas that are important to being able to perform the material duties of
> her occupation, her migraine headaches with stress from her job would have an
> impact on her ability to work consistently at her occupation. Ms. Bailey has
> continued  migraines, dizziness, nausea, depression, stress and periods of blacking
> out which results in an inability to even perform sedentary work on a consistent
> basis. Her occupation requires her to meet precise limits, tolerances and standards.
> Given her symptomology, this would be severely limited on a consistent basis.

AR273 (emphasis added). The statements from Dr. Elsagga on which Ms. Pennachio relies (even

if accepted as true – which Reliance Standard does not concede) provide no insight regarding

Plaintiff's condition, restrictions, or limitations on March 31, 2021.

There are other problems with Ms. Pennachio's analysis. First, she accepts Dr. Elsagga's

opinion that Plaintiff cannot work. But Reliance Standard is not required to do so. *See Nord*, 538

U.S. 822, 834, 123 S. Ct. 1965. Second, as noted, Ms. Pennachio specifically relies on Dr.

Elsagga's August 18, 2021 statement of Plaintiff's alleged limitations. AR273. However, on

August 18, 2021, Plaintiff was evaluated by Dr. Dejuk, who recorded Plaintiff's complaint of

migraine headaches but did not record any objective findings suggestive of Total Disability.

---

[1] As explained below, Reliance Standard also contends that Plaintiff worked in a sedentary
capacity prior to claiming disability; however, Reliance Standard classified her regular
occupation as an Accounting Clerk rather than a Billing Typist or an Invoice Specialist.  The
distinction is immaterial because Ms. Pennachio, in a subsequent report, accepts Reliance
Standard's classification of Plaintiff's regular occupation as an Accounting Clerk.

Regardless, August 18, 2021 is not the pertinent date. Plaintiff had to prove Total Disability as of March 31, 2021.

Dr. Elsagga and Ms. Pennachio summarized Plaintiff's condition in the days preceding and following her reported date of loss. Ms. Pennachio wrote:

> On 03/16/21 she was seen by Dr. Elsagga again via telehealth with continued complaints of chronic headaches which lasted for multiple days at a time. She advised that the pain was primarily occipital and on the right side of her upper neck and into the right temple of her eye. She reported that she tried Topamax but it made her disoriented.
>
> She followed up with Dr. Elsagga on 04/05/21 with complaints of dizziness and migraines. She reported passing out. An EEG was recommended and that was performed on 04/12/21 which was read as normal.

AR269. *See also* AR306-307, 303-305. Reliance Standard does not deny that Plaintiff has reported headaches. However, evidence of migraine headaches is not *per se* proof of Total Disability. *See e.g.*, *Wright v. Reliance Standard Life Ins. Co.*, No. 8:18-cv-2281-T-36TGW, 2019 U.S. Dist. LEXIS 247799, at *24 (M.D. Fla. Oct. 30, 2019) (finding that the claimant failed to prove total disability due to migraine headaches under either the *de novo* standard of review of the deferential arbitrary and capricious standard). *See also Cottingim*, 723 F. Supp. 3d 1173, 1196 (citing *Howard v. Hartford Life & Acc. Ins. Co.*, 929 F. Supp. 2d 1264, 1294 (M.D. Fla. 2013), aff'd, 563 F. Appx. 658 (11th Cir. 2014) as "observing 'doctors' diagnoses do not in and of themselves, establish a disability and inability to work'"). The facts of this case further prove that migraine headaches are not necessarily disabling.

While not included in Ms. Pennachio's summary, the March 16, 2021 progress note cited by Ms. Pennacchio includes a chronology of Plaintiff's prior medical history, dating back to November 3, 2020, at which time Plaintiff told Dr. Elsagga that she has worked as an invoice specialist for the past 14 years and that "she has about a 10 year [history] of migraines. She states about 4 [years] ago she began having severe migraines about once a week". AR306. These

statements prove that Plaintiff can – and did – perform the duties of her regular occupation with

the reported migraine headaches. Given Plaintiff's decade long history of working with reported

migraine headaches and four year history of working with self-described "severe migraines",

there is no explanation of what changed on or about March 31, 2021 to suddenly (and allegedly)

preclude Plaintiff from working – even when her self-reported complaints are considered. *See*

*Bumpas v. UNUM Life Ins. Co. of Am.*, No. 8:03-CV-2105-T-27-TGW, 2005 U.S. Dist. LEXIS

22042, at *8 (M.D. Fla. Sep. 28, 2005) ("Summary judgment entered in favor of the defendant

plan when the court wrote that the plan "found that Plaintiff has been functional since 2000 and

correctly observed that his records revealed no changes in his clinical condition or course of

treatment as of the time he stopped working").

> **2.      Total Disability is not proven even when Plaintiff's self-reported**
>
> **complaints are considered**

In *Keith v. Prudential Ins. Co. of Am.*, 347 F. App'x 548, 551 (11th Cir. 2009), the

insured relied on self-reported complaints that he claims the plan ignored when it denied his

claim for long term disability benefits. However, to the contrary, the court concluded that the

plan "recognized that Keith had the conditions for many years and had managed to perform her

job despite the conditions". *Id.* at 551. The court noted further that "[t]he opinions of Keith's six

medical examiners and two chiropractors included a wide-range of medical diagnoses--from a

'normal' physical examination to noting that Keith "looked great" to extremely tender trigger

points". *Id.* at 551. The plan "had this evidence reviewed by a registered nursed, a board-certified

medical consultant, and an independent medical professional, all of whom reached the same

conclusion--that the evidence did not support a claim of disability." *Id.* at 551. Finding that the

plan "denied benefits because all of the record evidence, including Keith's subjective complaints

of pain, did not support a finding that she could not perform sedentary work" the Eleventh

Circuit "[l]ike the district court, [could not] conclude that Prudential's decision was arbitrary or

unreasonable.

On December 21, 2022, a member of Reliance Standard's clinical staff summarized

Plaintiff's medical records and wrote "[m]edical records do not identify inability to perform any

exertional level of function beyond the date of loss as despite claimant's self-reported symptoms,

exam remained essentially unremarkable. Referenced EEG was normal, cervical spine MRI did

not show supporting findings, brain MRI and head CTA were normal." AR55. Reliance

Standard's internal medical consultant asked the questions she "[c]an't do what because of what"

and explained that the answers were "not documented". AR54. In other words, Plaintiff had not

proven her claim. As discussed in greater detail below, on August 25, 2023, Dr. Glass, a Board

Certified neurologist also considered the medical records and Plaintiffs' self-reported

complaints, and he concluded that Plaintiff has some identifiable conditions that require

restrictions and limitations but none that would preclude Plaintiff from working in her sedentary

occupation. AR788-796. Plaintiff offered no physician opinion to counter Dr. Glass' report.

### 3.     Reliance Standard reasonably relied on the opinions of its vocational staff and the independent report of Dr. Glass

Christina A. Buckley, M.Ed., CRC and Mia Zafarino, M.S., CRC, two Vocational

Rehabilitation Specialists also reviewed Plaintiff's claim and agreed with Ms. Pennacchio that

Plaintiff's regular occupation is appropriately classified as a sedentary occupation; however,

each concluded that her occupation was best aligned with the position of an "accounting clerk"

rather than a "billing typist". AR809-811, 812-814. Ms. Zarafino explained that "accounting

clerk" is consistent with the job description supplied by Plaintiff, Plaintiff's disclosure statement,

her essential duties, as identified by Plaintiff's counsel. AR812. Beyond this analysis, Ms.
Zafarino also considered the opinion of Dr. Glass to determine whether Plaintiff can perform the
duties of her occupation. AR788-796.

As part of his review, Dr. Glass considered the treatment records of Dr. Elsagga (for the
period March 16, 2021 through September 12, 2022); Laboratory reports; Records from Dr.
Dejuk (for the period October 5, 2020 to August 16, 2022); an October 27, 2022 Physician
Disability Claim form completed by Dr. Elsagga and Ms. Pennachio's vocational assessment.
AR788. To further inform his opinion, Dr. Glass attempted to contact Dr. Elsagga, leaving voice
messages for Dr. Elsagga on August 16, 17 and 18, 2023. Dr. Elsagga did not return the calls.
AR793.

Based on the records, Dr. Glass conclude that Plaintiff has (i) "a history of migraines
associated with dizziness (vestibular migraine)"; (ii) "a history of synocopal and presynocopal
episodes" and (iii) obstructive sleep apnea. AR794. According to Dr. Glass, Plaintiff's sleep
apnea was not impairing; however, vestibular migraine was "neurologically impairing due to the
presence of dizziness and imbalance" and he also concluded that the syncopal and presyncopal
episodes are also neurologically impairing. AR794. Dr. Glass wrote that the "restrictions in both
conditions are essentially the same" and are limited to "tasks requiring balance (push, pull, lift,
carry, bend, crouch, crawl, kneel, climbing, unprotected heights and heavy machinery) as well as
those that would result in injury if the claimant was to lose balance". AR795.

Dr. Glass concluded that during an eight hour work day, Plaintiff can sit for 8 hours;
stand and walk for two hours each (15 minutes at a time); push, pull, lift and carry up to 10
pounds occasionally; bend, crouch, crawl, kneel and climb stairs occasionally; and reach, type,
grasp, perform fine manipulation tasks and use foot controls constantly. AR795. Dr. Glass

recommended that Plaintiff never climb ladders, work at unprotected heights, use heavy machinery or drive. AR795. Ms. Zafarino concluded that "[t]he restrictions and limitations [recommended by Dr. Glass] are consistent with the physical demands of an Accounting Clerk as it is typically performed in the national economy" and "Ms. Bailey is not precluded from performing her Regular Occupation". AR813. "Under well-settled ERISA law, the administrator is 'entitled to rely on the opinion of a qualified [medical] consultant who neither treats nor examines the claimant, but instead reviews the claimants' medical records.'" *Cottingim*, 723 F. Supp. 3d 1174 (M.D. Fla. 2024) (quoting *Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280, 1291 (M.D. Fla. 2017) (quoting *Richey v. Hartford Life and Acc. Ins. Co.*, 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009))). After weighing the totality of the record evidence, Reliance Standard accepted the opinions of Drs. Glass and Ms. Zafarino. Reliance Standard's decision was reasonable, especially considering that additional information supplied by Plaintiff also proved unpersuasive.

### 4.    Reliance Standard reasonably rejected Ms. Pennachio's Updated Vocational Assessment and Arguments from Plaintiff's Counsel

In response to Dr. Glass's assessment and Ms. Zafarino's vocational review, Ms. Pennacchio prepared an "Updated Vocational Assessment" on October 23, 2023. AR818-822. Ms. Pennacchio wrote "[s]ince the Reliance Standard Insurance Vocational Consultant utilized a different occupation than I originally, I have evaluated this based on the occupation they chose", *i.e.*, accounting clerk. AR819.

Ms. Pennacchio wrote that "Ms. Bailey has reported migraines one to three migraines per week sometimes lasting up to four days" and "[w]hen she suffers from these migraines she must lie in a cold dark room and is unable to engage in any occupation especially staring at a computer

screen and keeping her head in an upright static position which exacerbates her migraines".
AR821. The assertion is not derived from any objective medical record but rather was pulled
from an October 18, 2023 letter from Plaintiff's counsel, who wrote "Ms. Bailey suffers from
chronic migraines and vestibular migraines with bouts of syncope. She has reported migraines 1-
3 migraines per week sometimes lasting 4 days…she must lay in a cold dark room and is unable
to engage in occupational duties, including, staring at a computer screen and keeping her head in
an upright static position, which exacerbates her migraines". AR823. Despite claiming to have
been incapacitated multiple days per week, there is no documentation of any hospitalization,
emergency room or urgent care visit to assess (and treat) Plaintiff's reported headaches in real
time while she was having one of these alleged episodes.

        As noted above, Plaintiff did not submit a physician opinion to counter Dr. Glass' report.
Still, to ensure a full and fair review, Reliance Standard asked that Dr. Glass consider the
submission of Plaintiff's counsel. AR828-829. Counsel's statement did not alter his opinion.
AR828. Dr. Glass wrote that "[n]o medical opinions were provided. The only information
provided was from the claimant's lawyer, providing a legal opinion and not providing any new
medical facts". AR828. Additionally, Dr. Glass wrote that "[t]he information…represents a non-
medical opinion regarding the claimant's neurological status" and "[g]iven the lack of any new
neurological or other medical facts medically supporting a neurological impairment, my prior
determination has not changed". AR828.

        Despite the lack of medical support for the claim, Reliance Standard also considered Ms.
Penacchio's updated opinion. Ms. Pennacchio stated that [i]n reviewing the [accounting clerk]
job description, this clearly demonstrates her inability to sustain any duties in her regular
occupation. And for that matter, any occupation". AR821. Ms. Pennacchio relies on her initial

report, writing "I opined in my initial report, as of 08/18/21 Dr. Elsagga noted that she should refrain from work". AR822. But again, the pertinent question is whether Plaintiff was Totally Disabled as of the date on which she stopped working, which was March 31, 2021 and for the duration of the 90 day Elimination Period that followed. AR227. Ms. Pennachio expressed no opinion regarding Plaintiff's capabilities on these dates.

Ms. Buckley considered Ms. Pennachio's statements from a vocational perspective. Ms. Buckley wrote that "[w]hile it is appreciated that Ms. Bailey does in fact have symptomology related to her migraines/vestibular migraines, as indicted in the Peer Review of 8/25/23, the restrictions and limitations provided by the reviewer do not limit Ms. Bailey from performing tasks related to the 'Work Situations'" required of an Accounting Clerk. AR826. She also explained that "medical opinions were not provided with Consultant Pennachio's opinion supporting the inability to perform such tasks as attaining precise set limits, tolerances, standard on a consistent basis". AR826. Ms. Buckley concluded that "the previous opinion in the Own Occupation Review of 9/27/23 would remain the same, that Ms. Bailey would not be precluded from performing her Regular Occupation of Accounting Clerk". AR826. Plaintiff has offered no credible and objective evidence to the contrary.

### C.    The award of Social Security Disability Benefits is not binding on Reliance Standard.

On March 31, 2023, the Social Security Administration awarded disability benefits to Plaintiff after finding that she became disabled under the Social Security rules on March 30, 2021. AR726-729. As a matter of law, the award of the Social Security Administration is not binding on Reliance Standard. There are "critical differences between the Social Security disability program and ERISA benefit plans". *See Black & Decker Disability Plan v. Nord*, 538

U.S. 822, 834, 123 S. Ct. 1965 (2003). *See also Manning v. Johnson & Johnson Pension Comm.*, 504 F. Supp. 2d 1293, 1305 n.9 (M.D. Fla. 2007) ("The Court notes that the Social Security Administration determined Manning to be disabled…[and] while the undersigned may consider that Manning was awarded and still receives SSA benefits in reviewing the plan administrator's decision regarding eligibility for benefits under ERISA, such a determination is not dispositive") (internal citations omitted).

While not dispositive, the Social Security award was considered, but like all of Plaintiff's other purported proof, it lacks any basis for an award of a monthly benefit under the terms of the Reliance Standard plan. The award letter is not at all persuasive, in part because it does not state the basis for the determination. Moreover, as the Social Security notice is dated March 31, 2023, the Social Security Administration therefore did not have the benefit of Dr. Glass' August 25, 2023 initial report and his November 20, 2023 or the vocational reports prepared by Reliance Standard. Reliance Standard's decision that Plaintiff claim remains unsubstantiated is not arbitrary and capricious.

## V.    Conclusion

The question here is simple. Has Plaintiff proven, objectively, that she was Totally Disabled from her regular occupation effective March 31, 2021 because of her reported migraine headaches? Prior to claiming Total Disability, Plaintiff worked in the same occupation for 14 years and she experienced migraine headaches for the last ten of those years (severe migraines for the last 4 years). This alone proves that Plaintiff can perform the material duties of her occupation despite her reported headaches. There is no evidence of any gradual or acute progression of her symptoms on or about March 31, 2021. There are no objective findings to support a sudden functional impairment that would preclude her from performing the material

duties of her occupation. Reliance Standard is entitled to summary judgment in its favor because

Plaintiff has not proven that she is entitled to the monthly benefit that she seeks.

<div style="margin-left:50%">

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP

BY:    */s/ Tanya Suarez*
       Tanya I. Suarez, Esquire
       100 SE 2nd Street
       Suite 2100
       Miami, FL 33131
       Telephone: (305) 341-2298
       Tanya.Suarez@WilsonElser.com
       Attorneys for Plaintiff, Reliance
       Standard Life Insurance Company

</div>

Date: January 31, 2025